COURT OF APPEALS
DECISION
DATED AND FILED

September 22, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1866**

STATE OF WISCONSIN

Cir. Ct. No.  2021CV173

IN COURT OF APPEALS
DISTRICT IV

---

JEDEDIAH HEERINGA,

   PLAINTIFF-RESPONDENT,

 V.

CORY J. "CJ" MACHT AND NICHOLAS MACHT,

   DEFENDANTS-APPELLANTS,

CORY MACHT,

   DEFENDANT-THIRD-PARTY PLAINTIFF-APPELLANT,

 V.

ROBERT J. MACHT, SR. AND SHERRYL HEERINGA,

   THIRD-PARTY DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dodge County: JOSEPH G. SCIASCIA, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Cory Macht, Sr. (Cory) along with his sons Cory Macht, Jr. (C.J.) and Nicholas Macht ("the Macht defendants") appeal an order denying their motion for relief from a stipulation that settled all issues in litigation involving them and other members of their extended family. The parties signed and submitted to the circuit court a stipulation that expressly settled all claims by all parties. Days after the stipulation was executed, but just before it was submitted to the court for approval, Cory personally (*i.e.*, not through his attorney) wrote a letter to the circuit court requesting a "continuance in my case" to obtain new counsel and allow his case to be heard. He alleged that he signed it only under "duress" from his attorney and that he needed time to retain new counsel. The court interpreted Cory's letter as a motion for relief from a stipulation under WIS. STAT. § 806.07(1) (2019-20) and held a hearing on the motion.[1] The court denied relief, determining in pertinent part that any "coercion" that Cory experienced in agreeing to the settlement did not meet any of the grounds for relief contemplated by § 806.07(1).

¶2 On appeal, the Macht defendants argue that the circuit court erroneously exercised its discretion by failing to consider WIS. STAT. § 806.07(1)(h), which allows for relief from a stipulation for "[a]ny other reasons justifying relief," and also by failing to apply pertinent legal standards based on

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

para. (1)(h). The respondents, Jedediah Heeringa, Sherryl Heeringa, and Robert Macht, Sr. ("the Heeringas"), counter by arguing that the court did consider § 806.07(1)(h) and that the court reflected this by expressing views regarding the merits of the Macht defendants' claims, a consideration that could in this context be relevant only to the potential application of para. (1)(h). Taking into account the record as a whole, we conclude that the court properly exercised its discretion in weighing factors relevant to the para. (1)(h) factors. Accordingly, we affirm the circuit court's denial of the Macht defendants' motion for relief.

## BACKGROUND

¶3      On January 5, 2021, Jedediah Heeringa filed a small claims eviction action against the Macht defendants. Cory Macht is Heeringa's step-uncle; C.J. and Nicholas are Macht's sons. On April 13, 2021, Cory filed an amended counterclaim and third-party complaint against Robert Macht, Sr., claiming breach of contract, promissory estoppel, and unjust enrichment. Cory alleged that Robert breached an oral agreement to sell land to Cory by selling it instead to Jedediah. Cory alleged that he had made regular insurance and mortgage payments on the property before Robert sold the property to Jedediah. In reference to the same alleged oral agreement between Robert and Cory, Cory also made a claim of tortious interference with contract against Jedediah and Sherryl Heeringa (Cory's sister and Jedediah's stepmother).[2] Cory also asserted that one or more parties placed liens against his property without his knowledge and fraudulently borrowed against his property.

---

[2] Macht also made a theft claim against his daughter and sister for allegedly appropriating funds from his checking account for their personal use without his authorization. Macht later dismissed these claims, which are not at issue in this appeal.

¶4 Beginning shortly after the commencement of this action and continuing through Cory's letter to the court, Kelly Schwab was the Macht defendants' attorney of record. But, at least from the time of his letter to the court onward, Cory took the position that Joshua Hermes, another attorney at Schwab's firm, was Cory's primary attorney and his point of contact in these matters. In August 2021, Hermes informed Cory that he was taking a new job and, as a result, Hermes could not continue to represent Cory. Soon after that, Hermes filed a motion on behalf of the firm to withdraw as counsel. Hermes noted as grounds that his pending departure from the case would result in staffing that was inadequate to allow the firm to continue representing the Macht defendants. However, on August 31, Schwab wrote to the court to explain that her firm would stay on the case; it was no longer pursuing the motion to withdraw.

¶5 On September 7, 2021, Cory personally (that is, independently of counsel) wrote a letter to the court requesting a "continuance in my case" in order to "find an attorney to properly represent [him]."[3] While the letter does not request that Cory be relieved from a stipulation, it makes several negative references to the settlement and to what Cory represented had been his thought processes in settling.

---

[3] Though Cory was the only person who signed this letter, C.J. and Nicholas join him in this appeal.

Separately, we now note details regarding timing of the letter. On appeal, the Macht defendants assert that Cory sent the letter to the circuit court on Sunday, September 5, 2021, but that the circuit court did not file the letter until Tuesday, September 7 due to the Labor Day holiday. Cory dated the letter September 7. Because the discrepancy between the two dates is small and both dates are close in time to the September 3 signing of the stipulation, these differences do not significantly affect our analysis. As we explain below, we weigh the relative promptness of Cory's letter to the court slightly in his favor as somewhat mitigating the prejudice that relief from the stipulation would have on the other parties.

¶6     Cory made the following allegations in this letter.  Schwab called Cory on August 27 and told him that she would continue to represent him.  But she was significantly less familiar with the case than Hermes was.  At a meeting with Cory on August 30, Schwab took positions significantly different from those Hermes had taken, informing him:  that she did not want to be on the case; that criminal charges could be filed against Cory; that he could not win his case; and that he would be responsible for paying the fees of opposing counsels.  Schwab's statements, according to Cory, "persuaded" him to "settle [the] case."  Given "threats and severe consequences" coming from "the lawyers," Cory "suddenly found [himself] in a moment of duress[,] not knowing which way to turn."

¶7     Counsel for Jedediah and Sherryl wrote to the circuit court opposing Cory's request for a continuance, attaching a copy of a Settlement Agreement And Mutual Release ("settlement agreement") that the parties had signed on September 2 to "fully and finally resolve" their disputes.  The settlement agreement provided that, upon execution and court approval of the settlement agreement, the parties' counsel would execute and file a "Stipulation and Order for Dismissal" ("stipulation").  Counsel for Sherryl and Jedediah filed the executed stipulation on September 8.  The circuit court declined to approve the stipulation pending the resolution of the issues Cory raised in his letter.  The circuit court interpreted Cory's letter to be a motion for relief from a stipulation under WIS. STAT. § 806.07(1).[4]  On October 1, the court held a hearing on the

---

[4] Entitled "Relief from judgment or order," WIS. STAT. § 806.07(1) provides:

> (1)  On motion and upon such terms as are just, the court … may relieve a party or legal representative from a judgment, order *or stipulation* for the following reasons:

(continued)

5

motion. At the hearing, the court listed some of the grounds for relief that are contained in § 806.07(1) and invited Cory to "make his case."

¶8 The Macht defendants testified in support of their request for relief from the stipulation, each testifying that Schwab "coerced" them into signing the settlement agreement. Their testimony was consistent with the allegations in the letter, including Cory questioning Schwab's motivations for urging a settlement, testifying that Schwab did not "want to deal with [the case] while she [was] ill and [had] surgery coming up." However, Cory conceded that Schwab discussed a few terms of the settlement with him.

¶9 C.J. and Nicholas acknowledged having signed the settlement agreement. Cory denied doing so. Cory testified that he signed only a right of

---

(a) Mistake, inadvertence, surprise, or excusable neglect;

(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void;

(e) The judgment has been satisfied, released or discharged;

(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

(Emphasis added.)

6

first refusal that gives him an option to match any purchase offer if Jedediah decides to sell the property within the first 15 years following the execution of the right of first refusal.

¶10 The circuit court made the following pertinent determinations. First, the court found that Cory did sign the stipulation, finding that the notary who witnessed the signing was credible and that Cory took actions consistent with having signed it.

¶11 Second, the circuit court concluded that Cory had no grounds for relief from the stipulation under WIS. STAT. § 806.07(1). In support of this conclusion, the court determined that the pressures that Cory testified he felt when he agreed to sign the settlement were not of the kind contemplated under § 806.07, in essence finding that Cory was not subjected to improper pressures. Further, the court determined that Cory's breach of contract claim was likely problematic on the merits. The court said that, based on the "law of Real Estate, if [an agreement] isn't in writing you are behind the eight ball." Along the same lines, the court said that, in the absence of a written agreement in a real estate transaction, someone pursuing such claims has a "huge disadvantage" and that if Cory continued to pursue his claims he would be doing so with "one hand tied behind [his] back."

¶12 Following the hearing, the circuit court entered an order that (1) denied the Macht defendants' motion for relief from the stipulation, (2) approved the stipulation settling all remaining claims, and (3) dismissed the action with prejudice.

¶13 The Macht defendants appeal. Jedediah Heeringa and Sherryl Heeringa filed a response, which Robert Macht joins.

**DISCUSSION**

¶14    The Macht defendants argue that the circuit court erred in denying Cory's motion for relief brought under WIS. STAT. § 806.07(1), the text of which is quoted in a footnote above.  Paragraphs 806.07(1)(a)-(g) list seven specific grounds for relief, but the Macht defendants do not argue that any of these grounds apply here.  Rather, the Macht defendants argue that the court erroneously exercised its discretion by failing to consider § 806.07(1)(h), the "catch-all" provision, which provides relief for "any other reasons justifying relief from the operation of the [stipulation]."  *See Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶9, 282 Wis. 2d 46, 698 N.W.2d 610 (characterizing para. 806.07(1)(h) as a "catch-all" provision).  With respect to para. (1)(h), the Macht defendants argue that the circuit court failed to apply the proper legal standard by not considering factors relevant to the issue of whether there are the "extraordinary circumstances" that must be shown to merit the granting of a motion for relief under § 806.07(1)(h).  *See State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 552-53, 363 N.W.2d 419 (1985).

¶15    We begin by explaining the standard of review, followed by the substantive standards for relief under WIS. STAT. § 806.07(1)(h).  We then apply these standards and explain why we reject the argument that the circuit court did not properly apply these standards.

**I.  Standard of Review**

¶16    We review a circuit court's decision to grant or deny relief under WIS. STAT. § 806.07(1) for an erroneous exercise of discretion.  *Franke v. Franke*, 2004 WI 8, ¶54, 268 Wis. 2d 360, 674 N.W.2d 832.  "The term 'discretion' contemplates a process of reasoning which depends on facts that are in

8

the record or are reasonably derived by inference from the record, and yields a conclusion based on logic and founded on proper legal standards." *Shuput v. Lauer*, 109 Wis. 2d 164, 177-78, 325 N.W.2d 321 (1982). There is no erroneous discretion when the court exercised its discretion and there is a reasonable basis for the court's determination. *State ex rel. Cynthia M.S. v. Michael F.C.*, 181 Wis. 2d 618, 624, 511 N.W.2d 868 (1994). A decision of a circuit court that "requires the exercise of discretion" and that "on its face demonstrates no consideration of any of the factors on which the decision should be properly based" is an erroneous exercise of discretion as a matter of law. *Conrad v. Conrad*, 92 Wis. 2d 407, 414-15, 284 N.W.2d 674 (1979).

¶17 Turning to relief from a stipulation, circuit courts "have 'broad discretionary authority' to grant relief under [WIS. STAT.] § 806.07(1)(h)." *Allstate Ins. Co. v. Konicki*, 186 Wis. 2d 140, 148-49, 519 N.W.2d 723 (1994) (quoting *Mullen v. Coolong*, 153 Wis. 2d 401, 407, 451 N.W.2d 412 (1990)). Given the importance of the exercise of discretion to a circuit court's functioning, "'we generally look for reasons to sustain discretionary decisions.'" *Id.* at 149 (quoted source omitted). We review a discretionary decision in the following manner:

> [W]e look first to the court's on-the-record explanation of the reasons underlying its decision. And if that explanation indicates that the court … "considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consistent with the applicable law, we will affirm the decision even if it is not one with which we ourselves would agree."

*Id.* at 149-50 (quoted source omitted).

¶18 On a related point, we do not disturb the circuit court's findings of fact unless they are clearly erroneous, meaning that the findings of fact are

"against the great weight and clear preponderance of the evidence." ***Royster-Clark, Inc. v. Olsen's Mill, Inc.***, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.

### II. Relief Under WIS. STAT. § 806.07(1)(h)

¶19     Before a party can show that there are "[a]ny other reasons justifying relief" under WIS. STAT. § 806.07(1)(h), there must be a showing of "extraordinary circumstances." ***M.L.B.***, 122 Wis. 2d at 549-50, 552-53.  Our supreme court has established the following factors to be relevant, using the term "the claimant" for the person seeking relief:

> whether the judgment was the result of the conscientious, deliberate, and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

***Id.*** at 552-53.

¶20     These factors are not exhaustive; circuit courts should consider "any other factors bearing upon the equities of the case." ***Miller v. Hanover Ins. Co.***, 2010 WI 75, ¶58, 326 Wis. 2d 640, 785 N.W.2d 493.  Nonetheless, a circuit court must, at a minimum, consider the five ***M.L.B.*** factors in "determining whether extraordinary circumstances are present under WIS. STAT. § 806.07(1)(h) such that relief from a judgment … is appropriate." ***Miller***, 326 Wis. 2d 640, ¶41.  However, if a circuit court fails to consider one or more of the ***M.L.B.*** factors, consistent with the more general standards noted above, we will "uphold [the] discretionary decision of the [circuit] court if, from the record, it can be concluded

*ab initio* that there are facts of record which would support the trial judge's decision had discretion been exercised on the basis of those facts." ***Conrad***, 92 Wis. 2d at 415; *see also* ***Miller***, 326 Wis. 2d 640, ¶47 (independently reviewing the record when the circuit court failed to set forth adequate reasons for its decision at a § 806.07(1) motion hearing).

¶21 Circuit courts are to construe WIS. STAT. § 806.07 to achieve a balance between the competing values of finality and fairness in the resolution of a dispute. ***M.L.B.***, 122 Wis. 2d at 542. Stated otherwise, § 806.07(1)(h) should be used only when "the circumstances are such that the sanctity of the final judgment is outweighed by 'the incessant command of the court's conscience that justice be done in light of all the facts.'" ***Id.*** at 550 (quoting ***Bankers Mtg. Co. v. United States***, 423 F.2d 73, 77 (5th Cir. 1970) (emphasis omitted)).

¶22 We note the following as procedural context for consideration of the circuit court's decision to hold a hearing based on the letter that Cory sent the circuit court. "To determine whether a party is entitled to review under WIS. STAT. § 806.07(1)(h), the circuit court should examine the allegations accompanying the motion with the assumption that all assertions contained therein are true." ***Sukala***, 282 Wis. 2d 46, ¶10. If such facts are "extraordinary or unique such that relief may be warranted under paragraph (1)(h)," the circuit court is to hold an evidentiary hearing to determine the truth or falsity of the allegations. ***Id.*** After doing so, and "upon consideration of any other factors bearing upon the

equities of the case," the circuit court exercises its discretion to decide whether to grant relief.[5] *Id.*

## III. Analysis

¶23   At the outset, we note that the Macht defendants could be understood to argue that the circuit court was required to explicitly discuss all of the *M.L.B.* factors and that its failure to do so was an erroneous exercise of discretion. We question whether such an approach is consistent with the standards summarized above, particularly the statement in *Conrad* that the court's analysis must "*demonstrate*[] … consideration" of the pertinent factors. *See Conrad*, 92 Wis. 2d at 414-15 (emphasis added). But in any case, even if we assume that cases such as *Miller* require a circuit court to explicitly delineate each of the *M.L.B.* factors, our search of the record for facts that sustain the court's exercise of discretion is sufficient to affirm here.[6]

---

[5] The Macht defendants argue that "assuming … that the [circuit] court considered Macht's motion under [WIS. STAT.] § 806.07(1)(h), it logically follows that the court found the 'extraordinary or unique facts' given that there was a hearing" and that the Heeringas and the circuit court failed to "identify any circumstances or factors[] supported by admissible evidence … which would disprove the court's initial finding of 'extraordinary or unique facts.'" We disagree. Whether or not the court initially had para. (1)(h) in mind, it appears that it held an evidentiary hearing based on the view that there was at least *some* possibility (however likely or remote) that relief would be warranted if the allegations in Cory's letter were proven true. The court's decision to hold a hearing was not a determination that Cory was entitled to relief unless proven otherwise; it was merely an opportunity for the court to evaluate the truth of Cory's claims and other relevant factors in considering whether Cory is entitled to relief.

[6] The Heeringas argue that the Macht defendants fail to show that they are entitled to relief under WIS. STAT. § 806.07(1)(h) because they did not raise the issue in the circuit court with "sufficient prominence such that the circuit court understands that it is being called upon to make a ruling." *See Bishop v. City of Burlington*, 2001 WI App 154, ¶8, 246 Wis. 2d 879, 631 N.W.2d 656. We acknowledge that this may present a close issue. But we assume, without deciding, that Cory raised this issue with sufficient prominence. That position is informed in part by the way in which the circuit court responded to the letter.

¶24 As a threshold set of issues, the Macht defendants assert that the Heeringas on appeal (1) fail to argue that the circuit court appropriately exercised its discretion by properly considering the *M.LB.* factors and (2) concede through silence that there were extraordinary circumstances justifying relief from the stipulation. The Heeringas' brief on appeal is not robust. But we question whether it is true that the Heeringas completely fail on appeal to address these points in some way. Further, given that "we may affirm the circuit court if it reached the correct result but for the wrong reason," *State v. Chitwood*, 2016 WI App 36, ¶34, 369 Wis. 2d 132, 879 N.W.2d 786, the Heeringas as the respondents can properly seek to justify affirmance on any ground. In addition, the burden to show that these extraordinary circumstances exist lies with the Macht defendants, who seek the application of WIS. STAT. § 806.07(1)(h). *Miller*, 326 Wis. 2d 640, ¶34. For all these reasons, the Macht defendants cannot prevail based on implicit concessions by the Heeringas on appeal.

¶25 Rather, following our supreme court's approach in *Miller*, we address each of the *M.L.B.* factors in evaluating the Macht defendants' claim for relief. We conclude that the circuit court here considered relevant facts and reasoned its way to a conclusion that a reasonable judge could reach and that is consistent with applicable law. To the extent that the court's reasoning did not clearly demonstrate consideration of these factors, our review of the record reflects a factual basis for concluding that, under these factors, the Macht defendants are not warranted relief from the stipulation.

¶26 Previewing our reasoning in reaching this conclusion, we address and reject numerous arguments made by the Macht defendants based on the purportedly improper pressures that they allege. Many of these arguments have no legal support. According to the Macht defendants, this consisted of (1) repeated

phone calls by Schwab to the Macht defendants urging them to settle in the relatively short period between their receipt of the settlement agreement and their signing it and (2) suggestions by Schwab that she would drop the Macht defendants as clients if they failed to settle. All of this, the Macht defendants alleged in the circuit court, was based on their attorney's personal commitments and interests and not based on an informed, professional assessment of the merits. Further, at least in their argument to the circuit court, the Macht defendants appeared to assert that Schwab improperly "threatened" or "coerced" them by telling them that continuing with litigation would result in criminal charges being filed against Cory and that he would be responsible for paying the fees of opposing counsel.

¶27 Moreover, the Macht defendants fail to persuade us that all of the alleged forms of purported improper pressures, even if proven, would be improper. For example, and to state the obvious, we agree with a point that is apparent in the circuit court's reasoning: it does not amount to improper pressure for an attorney to honestly advise a client that he or she should settle based on a lack of merit to the client's claims and potential negative consequences going forward.

A. *Conscientious, Deliberate And Well-informed Choice To Enter Stipulation*

¶28 To repeat, the first factor is whether the stipulation here was the result of a "conscientious, deliberate, and well-informed choice" by the Macht defendants. The Macht defendants argue that this did not occur because (1) Schwab allegedly would have stopped representing Cory if he did not sign the settlement agreement, (2) only a relatively short period of time passed between his receiving the settlement agreement and his signing it, (3) the circuit court allegedly never considered whether Cory received value from the settlement

14

agreement, and (4) there is allegedly no explanation for Macht's sudden "acquiescence" to Schwab's encouragement that he settle other than the "threats" made by his lawyer. As we further explain below, we conclude that the first factor weighs against relief under WIS. STAT. § 806.07(1)(h) because the purportedly improper pressures that prompted the Macht defendants to settle, especially when considered in light of implicit credibility determinations made by the circuit court, do not negate a reasonable interpretation that the Macht defendants conscientiously and deliberately entered into the stipulation having knowledge of its provisions.

¶29    The circuit court did not explicitly address this factor. But we conclude that the court nonetheless demonstrated that it considered the factor by referencing facts that are relevant to it. The court noted that Cory's letter to the court stated that "[he] [had] been persuaded by [his] own attorney to settle a case." The court reasonably interpreted this statement as Cory "conced[ing] that he was *persuaded* to settle the case." (Emphasis added.) The court's use of the phrase "was persuaded" suggests a finding that Cory, while not originally favoring settlement, eventually decided to settle after discussing the case with his attorney. This "was persuaded" concept is inconsistent with the Macht defendants' claims of improper pressures.

¶30    The circuit court also directly addressed what we have referred to as purportedly improper pressures to settle. Specifically, the circuit court determined that "the kind of pressures that motivated Mr. Macht to settle the case are not the kind of pressures that are contemplated under [WIS. STAT. §] 806.07." On this point, the court began by acknowledging that Cory faced some "fairly unpleasant alternatives to the settlement," such as substantial costs in attorney's fees and, by Cory's own account under Schwab's assessment, a limited chance of success on

15

the merits. Beyond this, the court noted that proving Cory's claims would be an uphill battle because the purchase agreement was not in writing.

¶31 The circuit court noted that individuals typically settle lawsuits not because they think that they deserve only what they get out of the settlements, but because a settlement is the "lesser of two evils." The court said that there might have been a literal degree of "coercion to having to make a choice between" two undesirable options—that is, some might say that it is "coercive" for a party to have to accept a less than ideal settlement even under ordinary, proper considerations creating pressures in that direction. But the court further observed that this case did not involve coercion in the "legal sense." The court concluded that Cory was merely pressured to "face the facts of the case." The court's express reasoning is factually supported and reasonable.

¶32 Explaining further, the circuit court's reasoning implied a finding that, to the extent the Macht defendants allegations regarding purportedly improper pressures did in fact allege that his attorney applied improper pressures, they were not credible, perhaps because they misunderstood their attorney's advice on these points. We accept the circuit court's conclusions here to the extent that they are rooted in a witness's credibility. *See State v. Quarzenski*, 2007 WI App 212, ¶19, 305 Wis. 2d 525, 739 N.W.2d 844. When a circuit court does not make express credibility determinations, we will assume it made implicit findings on a witness's credibility. *Id.* An implied credibility finding may suffice, provided facts of record support it. *Office of Lawyer Regulations v. Parks*, 2018 WI 110, ¶10, 384 Wis. 2d 635, 920 N.W.2d 505; *see also Douglas L. v. Arika B.*, 2015 WI App 80, ¶18, 365 Wis. 2d 257, 872 N.W.2d 357 ("A circuit court may reject even uncontroverted testimony of a witness or may choose to believe some assertions and disbelieve others.").

16

¶33     What appears to remain of the Macht defendants' argument are two additional purportedly improper pressures.  First, the Macht defendants assert that Schwab made multiple phone calls urging them to settle, presumably referring to C.J.'s hearing testimony that Schwab was "calling [them] all night and telling [them] to sign [the stipulation]."  Second, the Macht defendants assert that Schwab told them that she would withdraw from the case if they did not settle, which would have left them without representation days before a scheduled deposition.  Without more, we fail to see how these two assertions, even if proven, could support granting the Macht defendants relief, and we decline to give weight to these assertions in our analysis.[7]

¶34     The circuit court's reasoning regarding the lack of improper pressures also undermines the Macht defendants' assertion that the court failed to consider whether Cory received value from the settlement agreement.  The court implicitly determined that Cory, in choosing the "lesser of two evils," did receive value, perhaps considerable value, from the settlement agreement by avoiding the greater "evil[]."

¶35     Moreover, additional information from the record further supports the conclusion that Cory made a "conscientious, deliberate, and well-informed choice" in entering into the settlement agreement.  Especially relevant is evidence that Cory was aware of the terms of the settlement agreement and that he had opportunities to provide input regarding its contents.

---

[7] As a side note, we observe that, when counsel for Jedediah and Sherryl attempted to clarify whether Schwab "called them all night," whatever that might exactly mean, C.J. responded with a more clear version of events that would seem to describe routine attorney practices:  "[W]ell, we were talking to her for a good amount of time one day before we met with her assistant the next day."  The circuit court was free to credit this version of events.

### B. *Effective Assistance Of Counsel*

¶36    To repeat, the second factor is "[w]hether the claimant received the effective assistance of counsel." Counsel provides effective assistance of counsel in this context when counsel has analyzed the governing law and the facts surrounding the case to reasonably estimate the claimant's chance of success. *See Allstate Ins. Co. v. Brunswick Corp.*, 2007 WI App 221, ¶¶10-11, 305 Wis. 2d 400, 740 N.W.2d 888. On this issue, the Macht defendants contend that the circuit court failed to inquire into a number of pertinent issues, including for example whether there was "a total about-face regarding the firm's assessment of the case." But in doing so, the Macht defendants merely imply an argument. They merely pose questions that they contend the court should have asked, rather than developing a supported argument that there was indeed an "about-face" by counsel that could amount to ineffective assistance. This in itself is a sufficient basis to reject whatever arguments they intend to make on this factor. *See Miller*, 326 Wis. 2d 640, ¶34 ("The party seeking relief bears the burden to prove that extraordinary circumstances exist."). Further, as we now explain, even addressing the Macht defendants' argument as best we understand it, we would reject it and conclude this factor weighs in favor of affirming the circuit court.

¶37    Here again, the circuit court appears to have shown consideration of this factor by referencing facts relevant to it. Regarding the merits of Cory's claim, the court characterized Cory's understanding of Schwab's position to be that Cory "didn't have a very good chance of winning." The court went on to agree with this overall assessment. The court observed that, under real estate law, an individual who pursues a claim related to a real estate transaction without a written agreement faces a "huge disadvantage." Thus, although the court also stated that it "ha[d] no idea" "whether [Schwab] [was] right or wrong or whether

she did a good job," the court essentially found that it lacked a basis to conclude that Schwab's positions were not based on reasonable, professional assessment of the merits of the claims.[8]

¶38 Much of the Macht defendants' argument on this factor relates to allegations noted above that Schwab put improper pressure on them to settle. Accordingly, much of our earlier discussion of the circuit court's implied credibility assessments regarding alleged improper pressures by Schwab undercuts the Macht defendants' position on this factor as well.

### C. Judicial Consideration On The Merits And The Interest Of Deciding The Case On The Merits Outweighs The Finality Of The Stipulation

¶39 Under this factor courts weigh two competing considerations: the interest in deciding a case on the merits and the interest in respecting the finality of stipulations. We describe these competing interests in more detail before applying them to the case here, explaining why this factor weighs against granting relief.

---

[8] We now address an issue involving the potential for Schwab to testify as part of the evidentiary hearing and why we conclude that the circuit court's handling of a subpoena issue did not prejudice Cory's ability to present evidence of ineffective assistance of counsel. At the start of the hearing, the parties discussed whether attorney-client privilege would shield Schwab from testifying pursuant to a subpoena issued by counsel for Jedediah and Sherryl. According to counsel for Robert Macht this testimony would include the "facts and circumstances surrounding the execution of the [s]ettlement." The circuit court said it would address the subpoena issue only if it was not a "no-brainer" whether the Macht defendants were entitled to relief, *i.e.*, if attorney Schwab's testimony, if proper, could influence the outcome of the Macht defendants' motion. The court did not address the issue of potential testimony from Schwab further. The Macht defendants apparently intend to argue that, by not addressing the subpoena issue again, the court failed to adequately inquire into whether Cory received the effective assistance of counsel. We reject any such argument. First, the court made clear that it would address the issue only if needed, the court evidently decided it was not needed, and for the reasons provided in the text we conclude that the court had a reasonable basis for that approach. Second, to repeat, Cory bears the burden to prove that Schwab provided him with ineffective assistance. Third, Cory did not seek Schwab's testimony.

¶40    Starting with the interest in adjudicating a case on the merits when there has been no previous judicial consideration of the merits, there is a preference "'to afford litigants a day in court and a trial on the issues.'" *Miller*, 326 Wis. 2d 640, ¶54 (quoted source omitted) (concluding that this factor weighed in favor of relief from default judgment, in part given large amount of money at stake). However, there is no interest in deciding a case on the merits when there is no chance of success on the merits. *See* *Brunswick*, 305 Wis. 2d 400, ¶12 (noting that at the time the parties entered into the stipulation, supreme court precedent would have required a result that was in line with the stipulation).

¶41    Turning to the finality of judgments component of this factor, as applied to stipulations, we pay particular attention to the intent of parties to use stipulations to settle legal disputes with finality.    In *Schauer v. De Neveu Homeowners Ass'n, Inc.*, for example, we observed that the parties' decision to settle reflected a "willingness to compromise a dispute" that the court will not disturb merely because, for example, there has been a change in the legal background against which the stipulation was drafted. *Schauer*, 187 Wis. 2d 32, 37-38, 522 N.W.2d 246 (Ct. App. 1994); *see also* *Schauer v. De Neveu Homeowners Ass'n, Inc.*, 194 Wis. 2d 62, 533 N.W.2d 470 (1995) (affirming and quoting court of appeals decision). Allowing relief in such an instance would "do violence to the concept of finality in litigation." *Schauer*, 187 Wis. 2d at 37-38. *Schauer* is distinguishable from the facts here to the extent that it involved a motion for relief under WIS. STAT. § 806.07(1)(f), which provides relief when "[a] prior judgment upon which the judgment is based has been reversed or otherwise vacated." However, *Schauer* nonetheless stands for the broader principle that stipulations should generally be respected as expressions of the parties' intent to resolve their disputes with finality. Relevant here, we observed that "relief from a

20

settlement is not warranted merely because a settlement appears in hindsight to have been a bad bargain." *Schauer*, 187 Wis. 2d at 37.

¶42    Applying these principles here, we first consider the interest in adjudicating the merits of the Macht defendants' case.  The Macht defendants argue that the circuit court "shut down" the inquiry into the merits of the case, by which they apparently intend to argue that the court's analysis was truncated or incomplete in some manner.  Of course, there was no adjudication of any of the parties' claims on the merits, as would have occurred for example if there had been a trial to verdicts.  But the court's pertinent statements were sufficient to reject the merits of the motion as they were presented.  To repeat, the court expressed skepticism regarding the merits of Cory's breach of contract claim, reasoning that the lack of a written agreement hurt Cory's chances for success on the merits.  The court's assessment of a diminished chance for success on the merits, which the Macht defendants do not dispute, significantly lowers the interest in allowing this case to be addressed on the merits.

¶43    On the finality point, the Macht defendants argue that the circuit court never considered whether the interest in finality of the stipulation outweighed the interest in having the court address the merits.  They further emphasize that Cory requested relief before any order enforcing the stipulation went into effect and that the court did not identify any prejudice that would occur if the case had been reopened only a few days after the stipulation was signed by the parties.

¶44    It is true that the circuit court did not explicitly reference the finality interest.  However, before approving the settlement, the court addressed the relevant considerations that we have already noted (*i.e.*, limited chance of success

21

on the merits, Cory not subject to improper pressures). For all these reasons, we can infer that the court determined that Cory failed to present adequate grounds to disturb the finality of the settlement and, as a result, that it was reasonable for Cory's case to settle. The Macht defendants fail to identify an erroneous or unreasonable feature of the court's approach.

¶45 Our review of the record further bolsters the circuit court's analysis that finality favors holding the Macht defendants to the stipulation based on the settlement. While the precise timeline and various specifics are unclear, there is no doubt that the parties expended effort in negotiating the settlement. In addition to the Macht defendants, four others signed the settlement agreement. The relatively prompt nature of Cory's letter to the court may have lessened the potential prejudice to the other parties. Nevertheless, it remains that reopening would have potentially prejudiced the Heeringas with respect to the effort spent preparing the settlement and the parties' intent to be bound by it. Pairing this idea of prejudice to the other parties with the court's implied finding that Cory failed to establish a basis for disturbing finality, this factor weighs against relief.[9]

### D. Meritorious Claim

¶46 The meritorious defense factor calls for an inquiry into "whether[, if] given another chance, the party seeking to vacate the judgment could reasonably expect a different result." **Brunswick**, 305 Wis. 2d 400, ¶14. As applied here, the

---

[9] We reject as undeveloped the Macht defendants' assertion that one consideration favoring reopening was the fact that there were parallel criminal investigations into other parties (as opposed to references to criminal charges potentially facing the Macht defendants referenced above), and their suggestion that the circuit court improperly "shut down" inquiry into this issue. It is sufficient to note that these arguments lack relevant legal support.

question of whether the Macht defendants could reasonably expect a "different result" relates to whether they would be able to successfully pursue their counterclaims and avoid eviction. *See id.* The Macht defendants' primary legal theory is that, when Heeringa received title to the property that Cory's father previously owned, Heeringa obtained the power to evict the Macht defendants, but only by tortuously interfering with a purported oral agreement Cory made with his father in purchasing the same parcel.

¶47 As we have discussed in relation to numerous factors above, the circuit court appropriately considered whether the Macht defendants had a meritorious defense. We interpret the court's statement that someone pursing a claim related to an oral real estate purchase agreement is "behind the eight ball" as an implicit reference to WIS. STAT. § 706.02, commonly referred to as the "statute of frauds." *See, e.g.*, ***Dow Family, LLC v. PHH Mortg. Corp.***, 2014 WI 56, ¶37, 354 Wis. 2d 796, 848 N.W.2d 728. Section 706.02 lists a series of requirements for a land transaction under WIS. STAT. § 706.001 to be valid. This includes a land transaction involving a signed written instrument that identifies the parties, the land, and the interest conveyed. The circuit court here recognized that there are "exceptions to the [statute of frauds]." Indeed, the court's comment that the absence of a written agreement in a real estate transaction presents a "huge disadvantage" to someone litigating a claim pursuant to that alleged agreement suggests consideration of the exceptions to § 706.02.

¶48 On appeal, the Macht defendants argue that the circuit court failed to sufficiently evaluate whether exceptions to the statute of frauds are present in this case. We reject this argument for two reasons. First, the circuit court's reasoning is consistent with case law generally establishing that the absence of a written land conveyance can create an uphill battle for anyone seeking relief, despite the

potential availability of equitable relief. *See Weber v. Weber*, 176 Wis. 2d 1085, 1094, 501 N.W.2d 413 (1993) (The rule of the statute of frauds "'requires reasonable caution and prudence in the transaction of business, and is deeply imbedded in our jurisprudence…. Better that [people] should be held to the consequences of their own culpable carelessness, than that courts of equity should undertake to relieve therefrom.'" (quoted source omitted)). Second, the Macht defendants do not persuade us that the court was obligated, on its own initiative, to explicitly delve more deeply into the exception topic. It was their burden to show that the factors apply in favor of relief. Further, the Macht defendants fail to develop a supported argument that they would be successful in pursuing what they refer to as "other claims asserted against" the Heeringas. We conclude that the court reasonably applied the facts of Macht's case to the law in determining that Cory had a limited chance of success on the merits.

¶49 The Macht defendants make two additional arguments with respect to the merits factor, but they do not affect our analysis. First, the Macht defendants contend that the circuit court improperly prevented Cory from presenting to the court the merits of his claim. During the hearing, the court told Cory that "the merits of the case are just a minor part of this" and instead directed him to focus on the specific grounds for relief under WIS. STAT. § 806.07(1). At the same time, the circuit court gave Cory time to discuss the merits, for example allowing him to address that he had recordings of Jedediah discussing the sale of the property. It was within the court's discretion to place limits on Cory's presentation of the evidence. A party, after settling and subsequently seeking relief from the settlement, is not entitled to a full-blown trial on the merits to gauge the likelihood of success when trying to reopen a case.

¶50    Second, the Macht defendants argue that, to the extent that the circuit court considered the merits, it based its analysis on improper evidence. Specifically, the Macht defendants argue that the court improperly based its assessment of Cory's case on statements made by opposing counsel. This is not supported by the record. Instead, it reflects that the court expressed skepticism regarding the merits of Cory's case based on the court's reasonable reliance on the evidence and the arguments of the parties. Of course, the fact that the court's independent assessment of the merits resembled positions taken by counsel for Robert Macht does not support the argument that the court relied improperly on advocacy by one side.

¶51    In sum, the circuit court gave appropriate consideration to the merits of Cory's claim under the circumstances. Accordingly, this factor weighs against granting relief.

*E. Intervening Circumstances Making It Inequitable To Grant Relief*

¶52    We assume without deciding that the circuit court did not address this factor and accordingly we review the record independently. This factor invites an inquiry into whether it would unfairly prejudice the nonmovant to grant relief to the movant, given changed circumstances. *See Miller*, 326 Wis. 2d 640, ¶¶18, 20, 57 (movant seeking relief from a default judgment could rely on unfair prejudice argument when nonmovant failed to show any intervening circumstances that made it inequitable to grant relief and no indication that the nonmovant was prejudiced by the delayed response); *see also Brunswick*, 305 Wis. 2d 400, ¶15.

¶53    The Macht defendants argue that, given that Cory relatively promptly requested relief after signing the settlement agreement, there were no

25

intervening circumstances that would make it inequitable to grant relief.[10] Setting aside our application of other factors, and on our review of the record, we do not identify an intervening circumstance that would make it inequitable to grant the Macht defendants relief. This factor thus weighs in favor of the Macht defendants. However, we conclude that it does not merit disturbing the circuit court's considerations discussed above that, in sum, weigh against granting relief.

### F. Additional Factors Bearing Upon The Equities Of The Case

¶54    In addition to the five *M.L.B.* factors, a court is to consider additional factors "bearing upon the equities of the case." *Miller*, 326 Wis. 2d 640, ¶58. The Macht defendants direct us to the circuit court's expression of concern that the parties should have "done this differently right from the start" and of the court's "appreciat[ion] [of] the difficulty that [Macht] [is] in." The argument is that these statements reflected a determination that the settlement did created an unjust result. However, we interpret the court to have made these statements to address how the parties handled *all* related events from the start of their dispute, or even earlier, and not to address the specific processes by which the settlement agreement was created, discussed, or executed. In other words, the circuit court merely acknowledged, in a respectful and reasonable manner, Cory's dissatisfaction about the case overall, and how in the end Cory's least bad path was to settle. Accordingly, these statements do not bear on Cory's motion for relief. Nor do we discern other factors potentially "bearing upon the equities of the case."

---

[10] We assume without deciding that the Macht defendants preserved this issue for appeal by raising it with sufficient prominence in the circuit court.

*G. Factors Summarized*

¶55    We conclude that four of the ***M.L.B.*** factors support the circuit court's decision to deny Cory's motion for relief under Wis. Stat. § 806.07(1)(h). The Macht defendants failed to show any of the following:  (1) that Cory did not deliberately enter into the settlement agreement under his own volition; (2) that Schwab did not provide effective legal assistance; (3) that the finality of judgments does not favor binding the parties to the stipulation; or (4) that Cory did not face significant legal difficulties in pursuing his claim.  The lack of an intervening circumstance that would make it inequitable to grant relief weighs in favor of the Macht defendants.  But this is not dispositive here given that the other four factors weigh against the Macht defendants.  Because the record provides a basis to affirm the circuit court's discretionary decision, *see **Conrad***, 92 Wis. 2d at 418, we affirm.

**CONCLUSION**

¶56    For all of these reasons, we affirm the circuit court's denial of Cory Macht's motion for relief from the stipulation pursuant to Wis. Stat. § 806.07.

*By the Court*.—Order affirmed.

This opinion will not be published.  *See* Wis. Stat. Rule 809.23(1)(b)5.